**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Joseph Elich v. Bayer AG, et al.* | : | Case No. 02-0434 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION AND FOR SUMMARY JUDGMENT**

Defendants move for an order denying class certification in the action brought by plaintiff Joseph Elich, who seeks relief (including medical monitoring) on behalf of a putative economic loss class. *See In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 162 (D. Minn. 2000) (recognizing that "[a]ny party may move for a class determination under Rule 23(c)(1)"); Pretrial Order ("PTO") 4 § IV.E (requiring plaintiffs to file motions and supporting briefs seeking class certification in 2002).[1] This Court already has denied certification of economic loss and medical monitoring classes because of the predominance of individual issues. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 211-14 (D. Minn. 2003). The facts of this case merely confirm the correctness of that ruling. Furthermore, plaintiff is not an adequate class

---

[1] *See also Thompson v. Merck & Co.*, Nos. C.A. 01-1004, *et al.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting motion to strike before plaintiff had moved to certify because it was "clear" plaintiff could not satisfy Rule 23 and "[n]o amount of additional class discovery will alter this conclusion"); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (recognizing that a motion to strike can be used to "test the viability of a class at the earliest pleading stage of the litigation") (collecting cases). *See generally Geeral. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

representative and does not assert claims typical of the absent class members he purports to represent. *See infra*, Argument, Part I.B.

Defendants also move for judgment on each of plaintiff's individual claims on five separate grounds:

- Baycol lowered plaintiff's cholesterol and did not injure him, and thus plaintiff is not entitled to any relief under California law.[2] *See infra*, Argument, Part II.A.

- Bayer warned of the exact side effects that plaintiff alleges that Baycol caused, and therefore he cannot maintain an action based upon an alleged failure to warn. *See infra,* Argument, Part II.B.

- Plaintiff has not produced evidence of a single false advertisement about Baycol, and thus his false advertising claims fail. *See infra*, Argument, Part II.C.

- Plaintiff's Consumer Legal Remedies Act ("CLRA") claim must be dismissed because he did not comply with a statutory pre-filing notice requirement. *See infra*, Argument, Part II.D.

- Medical monitoring is not a cognizable claim under California law, and plaintiff cannot recover medical monitoring as a form of damages, because he lacks the requisite case-specific expert testimony. *See infra*, Argument, Part II.E.

Therefore, this Court should enforce and reaffirm its master class certification ruling by denying certification of this putative class action, and enter summary judgment against plaintiff Joseph Elich as to his individual claims.

---

[2] As this Court has held, "federal courts apply the choice of law rules of the forum state" (in this case California) to substantive issues. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003). Plaintiff is a California resident who was prescribed Baycol in California, took Baycol in California, and was allegedly injured in California. Under California choice of law rules, California substantive law governs his claims and other substantive issues in this action. *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920-21 (2001); *In re Baycol Prods. Litig.*, 218 F.R.D. at 207.

## STATEMENT OF FACTS

### I. BAYCOL THERAPY REDUCED PLAINTIFF'S CHOLESTEROL.

Plaintiff Joseph Elich was first diagnosed with high cholesterol in 1990. *See* Elich Medical Records (Ex. A) at NDL000128-129jre. Initial efforts to control his high cholesterol through lifestyle changes were unsuccessful. Deposition of Joseph Elich (Ex. B) 61:22-25. In September 1997, plaintiff tried the 10 mg dose of Lipitor (a statin) to treat his high cholesterol. Lipitor did not lower his cholesterol and caused headaches. *See id*. at 58:20-23, 118:11-14; *see also* Elich Medical Records (Ex. A) at NDL000039jre.

In 1998, Dr. Neil Levine started plaintiff on Baycol, which plaintiff took until August 7, 2001. Elich Dep. (Ex. B) at 115:19-116:5; Elich Medical Records (Ex. A) at NDL000039jre. Plaintiff admits he benefited from lowered cholesterol levels. Elich Dep. (Ex. B) at 163:9-23. In fact, in September 1998, shortly after starting Baycol, Dr. Levine noted "[d]ramatic improvement in total and LDL from 161 to 122! Continue Baycol. Great news!" Elich Medical Records (Ex. A) at NDL000098jre. Plaintiff's medical records from August 1998, July 1999, June 2000, and December 2000 each document that plaintiff was tolerating Baycol with no adverse reactions. *Id*. at NDL000021-22, 28-29, 34jre.

In the late spring of 2001, plaintiff began to report muscular discomfort in his calves, thighs, and buttocks. Elich Medical Records (Ex. A) at NDL000017-18,145-146jre, ARD000012-13jre. Plaintiff was referred by his primary care physician to Dr. Andrew Deemer, a vascular surgeon, for review and treatment of these symptoms. *Id*.

Dr. Deemer diagnosed plaintiff with peripheral vascular disease and recommended a course of treatment involving Pletal. Deposition of Andrew Deemer, M.D. (Ex. C) at 18:13-20:24. Within weeks of starting Pletal, plaintiff's muscle symptoms improved. *Id.* at 24:1-12.

At his deposition, plaintiff nonetheless attributed the muscular discomfort that began in the late spring of 2000 to Baycol. Elich Dep. (Ex. B) at 142:14-143:13. Plaintiff explained away the three-year gap between starting Baycol therapy and the onset of muscle symptoms by theorizing that it took that long for a "residual buildup" to occur as he "consume[d] more and more of the product over a period of time." *Id*. at 141:24-142:5. Plaintiff – a retired salesperson – admitted that he has absolutely no support for this "theory" other than his own conjecture. *Id*.

Though Bayer never advertised Baycol directly to consumers,[3] Plaintiff testified to vague recollections of Baycol advertisements on television, in men's magazines, and in direct mailers. *Id*. at 98:23-103:20. He could not recall, however, when or where he saw these alleged advertisements. *Id*. at 103:21-24, 129:8-15. Moreover, he could not recall what any of the alleged advertisements said, except perhaps that Baycol was "[t]o reduce your cholesterol. See your doctor." *Id*. at 101:16-20.

---

[3] *See* Bayer's Verified Responses to Requests to Admit Facts in *De Bouse v. Bayer AG,* No. 04-L-53 (St. Clair County Cir., Ill. 2005) (Ex. D) Supplemental Answer 20-21, at p. 6; *see also* Deposition of Carol Clark, *In re Texas 8th Regional Baycol Litig*., No. 17-192700-02, (Vol. 2) (Ex. E) at 427:3-10.

## II. PLAINTIFF'S INDIVIDUAL CLAIMS AND THE CLASS ALLEGATIONS

Plaintiff filed his putative class action on October 22, 2001, alleging six claims: (1) California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*); (2) California's unfair competition statute (Bus. & Prof. Code §§ 17200 *et seq.*); (3) California's unfair advertising statute (Bus. & Prof. Code §§ 17500 *et seq.*); (4) breach of implied warranty; (5) fraudulent concealment; and (6) medical monitoring.

Plaintiff purports to bring this action individually and on behalf of a putative statewide and nationwide class of plaintiffs who "purchased and/or used the prescription drug Baycol for personal, family, or household purposes ('the Class') commencing from January 1, 1997 to August 8, 2001." Compl. ¶ 8. The Complaint expressly disclaims recovery for personal injuries attributable to the consumption of Baycol. *Id*. Rather, it seeks damages for economic losses, including, *inter alia*, the refund of purchase costs, compensatory damages, and medical monitoring. *Id*. at Prayer for Relief.

Contrary to the allegations in the Complaint, plaintiff testified at his deposition that he seeks recovery for physical injuries. Elich Dep. (Ex. B) at 167:2-168:4, 223:2-11. Indeed, plaintiff denied having any interest in obtaining a refund of the purchase price of Baycol for himself or for the putative class (*id*. at 169:13-16, 168:10-17), or in securing relief on behalf of a nationwide class. *Id*. at 186:6-11.

## ARGUMENT

## I. CLASS CERTIFICATION SHOULD BE DENIED.

Class certification is inappropriate and should be denied. Only if plaintiff could establish all of the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and demonstrate that a class could be maintained under Rule 23(b)(3) – by proving that common issues of fact and law predominate and that class litigation is superior – could a class be certified. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Plaintiff cannot do so here because, among other things:

- The claims in this case raise predominantly individual questions of fact and law. Indeed, this Court and numerous other courts have rejected certification of economic loss and medical monitoring classes due to the predominance of individual issues. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14.

- Plaintiff is not typical of, or an adequate representative for, the absent class members. By his own testimony, he is not a member of the putative classes alleged in the Complaint, seeks different relief from the absent class members, and does not care about protecting their interests. Elich Dep. (Ex. __) 167:2-168:4, 169:13-16, 223:2-11.

For each of these reasons, the Court should deny class certification.

### A. Individual Issues Predominate.

As this Court has previously ruled, product liability class actions such as this one are inappropriate for certification due to the predominance of individual issues. *In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14. That decision was and is consistent with the great weight of authority. *See, e.g.*, *Zehel-Miller v. Astrazenaca Pharms., LP*, 223 F.R.D. 659, 663-64 (M.D. Fla. 2004) (denying certification of refund and medical

monitoring classes as "manifestly inappropriate"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002) (rejecting refund and medical monitoring classes); *In re Phenylpropanolamine ("PPA") Prods. Liab. Litig.*, 208 F.R.D. 625 (W.D. Wash. 2002) (rejecting injury, risk of injury, fear of injury, and refund classes). "To date, no Court of Appeals decision has approved class certification of an action involving prescription drugs." *Sweet v. Pfizer*, 232 F.R.D. 360, 372-73 (C.D. Cal. 2005) (*quoting In re Baycol Prods. Litig*., 218 F.R.D. at 204). The Court therefore should reaffirm its prior ruling and reject this putative class.

**1. Individual issues predominate for an economic loss class.**

The economic loss claims here are no different from others held to be inappropriate for class treatment due to the predominance of individual issues. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 664; *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 633.

To recover the purchase price of Baycol, plaintiff "would have to demonstrate that [he and absent class members] were either injured by Baycol, or that Baycol did not provide them any health benefits." *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14; *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338-39 (1998) (dismissing UCL claim because plaintiffs "received *exactly what they paid for*"); *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 (2000) (recognizing right to "offset" benefits provided against unjust enrichment claim); *Intervention, Inc. v. Warner-Lambert Co.*, Judicial Council Coordinated Proceeding No. 4122 (*In re Rezulin Litig.*), Case No. C-01-0977, Order

(April 29, 2003) (Ex. F) at pp. 8-9[4] (dismissing unfair competition claim because plaintiffs did not prove drug was ineffective or harmful). But the "question whether an individual member got his or her money's worth" or was injured "is inherently individual." *Rezulin*, 210 F.R.D. at 69. Among other things, one would need to examine a person's medical history, determine the dosage(s) and period(s) of Baycol therapy, identify pre-existing conditions, consider possible drug-drug interactions, rule out alternative causes, determine cholesterol levels before, during, and after Baycol use, and factor in diet and exercise. *See Rezulin*, 210 F.R.D. at 68-69; *PPA*, 208 F.R.D. at 631.

Plaintiff's own claims illustrate the inherently individualized nature of the inquiry and the correctness of this Court's prior ruling denying certification.

- Plaintiff alleges that Baycol caused muscle symptoms three years *after* he initiated Baycol therapy in 1998. Elich Dep. (Ex. B) at 143:9-13. Absent class members took different doses of Baycol for different periods of time and reported different symptoms at different points in time after initiating (or ceasing) Baycol therapy. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 205-06.

- Plaintiff's muscle symptoms are fully explained by a concurrent diagnosis of peripheral vascular disease. Deemer Dep. (Ex. C) at 18:13-20:24. Absent class members will have different medical histories and will have taken different medications concurrently. Those different histories and medications could explain some or all of their symptoms. *See PPA*, 208 F.R.D. at 631; *Sweet*, 232 F.R.D. at 368-69.

[4] *Intervention* was decided before a November 2004 amendment to California law, which *heightened* the standing requirements for unfair competition and false advertising claims to require proof of "an injury in fact . . . as a result of" wrongful conduct. Cal. Bus. & Prof. Code §§ 17203, 17204. These amendments apply to pending actions. *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).

- Baycol may or may not have worked as effectively for other persons as it did for plaintiff, who achieved a "[d]ramatic improvement in total and LDL" cholesterol levels while on Baycol. Elich Medical Records (Ex. A) at NDL000098jre.

These and innumerable other differences explain why courts reject certification of economic loss classes in prescription pharmaceutical cases. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 664; *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 633; *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("the claim of unjust enrichment is packed with individual issues and would be unmanageable"); *Delaney v. Warner-Lambert Co.*, Judicial Council Coordinated Proceeding No. 4122 (*In re Rezulin Litig.*), Case No. BC227414, Order (Cal. Super. Ct. Jan 15. 2002) (Ex. G) at 6-10 (denying certification of economic loss class under California's unfair competition law and Consumer Legal Remedies Act). Asserting economic loss claims on behalf of a California-only class would not salvage these class allegations because individual issues still would predominate. *See Sweet*, 232 F.R.D. at 374-375; *Delaney*, Order (Ex. G) at 6-10. The Court therefore should, once again, deny certification here.

**2. Individual issues predominate for a medical monitoring class.**

This Court has correctly determined that medical monitoring in and of itself "destroy[s] the cohesive nature of the class claims" because it requires a case-by-case analysis of the past and present medical history of each class member. *In re Baycol Prods. Litig.*, 218 F.R.D. at 211; *Zehel-Miller*, 223 F.R.D. at 663-64. "[E]ach plaintiff's need (or lack of need) for medical monitoring is highly individualized." *In re St. Jude*

*Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (reversing certification of medical monitoring class as abuse of discretion).

This is particularly true here. Under California law, medical monitoring relief is not available unless reliable case-specific expert testimony establishes it is a reasonably foreseeable consequence of exposure. *See Potter v. Firestone Tire & Rubber Co.* , 6 Cal. 4th 965, 1006 (1993). An expert must weigh, among other things, the significance and extent of a person's exposure, the seriousness of the diseases for which the person is at an increased risk, and the relative increase in that person's chances of developing a disease as compared to if the exposure had not occurred. *Id*. at 1007.

Conducting such an inquiry for every Baycol user in the United States (or even just in California) between 1997 and 2001 would be impractical and unmanageable. *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *accord Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 652, 661 (M.D. Fla. 2001) (rejecting medical monitoring class as depending "upon the varied circumstances of the class members' exposure and other factors"). The Court therefore should reaffirm its prior ruling and deny certification of this putative medical monitoring class due to the predominance of individual issues. *Id.*

**3. Individual issues predominate with respect to why plaintiff and others used Baycol.**

To recover on the class complaint, plaintiff must prove that defendant's wrongful conduct was the "but for" cause of a decision to prescribe Baycol. Individual issues predominate in the proof for each class member.

California's unfair competition law, false advertising law, and Consumer Legal Remedies Act ("CLRA") require proof of an "injury in fact" or "damages" that occurred "as a result" of wrongful misconduct. *See* Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a). Courts in California and across the country have construed the phrase "as a result" to mean that proximate "causation [is] a necessary element of proof." *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 753, 754 (2003); *see also, e.g.*, *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). Breach of warranty and fraud claims also require proof of causation or reliance. *Scott v. Metabolife Int'l., Inc.*, 115 Cal. App. 4th 404, 415-16 (2003) (causation of injury an element of breach of warranty claim); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (reliance an element of fraud or deceit claim).

Certification is inappropriate when liability turns upon what each class member saw or read, and (for at least some claims) whether the putative class member relied upon a representation. Proof of causation or reliance is complicated here because the duty regarding warning about the risks of a prescription medication runs to physicians, who exercise independent judgment and act as learned intermediaries for patients. *See Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996) (duty to warn "runs to the physician, not to the patient"); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1061-1062 (1988). Plaintiff would need to prove that "the physicians would not have prescribed" Baycol if they had received different or additional warnings. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 321 (5th Cir. 2002). This additional inquiry into the judgment and knowledge of each prescribing physician demonstrates yet again why

individual issues predominate. *Rezulin*, 210 F.R.D. at 66-67; *Delaney*, Order (Ex. G) at 6-10 (denying certification of California class in part because of "individual analysis" needed to prove "reliance" by each prescribing physician). For this reason as well, individual issues predominate, and class certification should be denied.

**B. Plaintiff Is Not Typical Or Adequate.**

To be adequate, a party asserting claims on behalf of a putative class must demonstrate a willingness and ability to "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. Proc. 23(a); *In re Gen. Am. Life Ins. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). The related requirement of typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996); *accord Jones v. Allercare, Inc.*, 203 F.R.D. 290, 299-302 (N.D. Ohio 2001).

At a minimum, a person seeking to represent a class "must be part of the class and possess the same interest and suffer the same injury as the class members." *See Amchem*, 521 U.S. at 625-626 (internal alterations and quotations omitted). A person who pursues different damages is not typical and cannot represent the interests of the absent class members in a products liability action. *See Foster v. St. Jude Med. Inc.*, 229 F.R.D. 599, 604 (D. Minn. 2005).[5] Specifically, a person who claims to be "currently

[5] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 668-69 (D. Kan. 2004) (representative opting "to pursue certain claims on a class-wide basis while jeopardizing the class members' ability to subsequently pursue other claims" is inadequate).

injured" cannot represent persons who experienced "exposure only" and do not allege present injuries. *See Amchem*, 521 U.S. at 625-626; *Foster*, 229 F.R.D. at 604; *cf. In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 338-340 (S.D.N.Y. 2002) (representative's disavowal of personal injury claims demonstrated inadequacy to represent class members with personal injuries). The interests of a person pursuing damages for personal injuries are "not aligned" with those of a person seeking relief based solely on exposure. *See Amchem*, 521 U.S. at 626.

Here, plaintiff is neither typical nor adequate as a matter of law. Quite simply, plaintiff is not a member of any putative class alleged in the Complaint. The Complaint alleges that this action is brought on behalf of persons who do *not* seek recovery for personal injuries. Compl. ¶ 8 & Prayer for Relief. Plaintiff, on the other hand, seeks damages exclusively for alleged personal injuries. Elich Dep. (Ex. B) at 167:2-168:4, 169:13-16, 223:2-11. Plaintiff's personal injury claims thus place him outside of the very state and nationwide classes he purports to represent.

Because plaintiff seeks different relief from the absent class members, his interests also are "not aligned" with those of the absent class members. *See Amchem*, 521 U.S. at 626; *Foster*, 229 F.R.D. at 604. The Complaint seeks relief for economic loss in the form of refunds for the purchase price of Baycol. Compl. ¶ 8 & Prayer for Relief. Plaintiff testified that he has no desire or intent to recover such purely economic losses for himself *or* the absent class members. Elich Dep. (Ex. B) at 167:2-168:4, 169:13-16, 223:2-11. Because plaintiff cares only about recovering personal injury damages, he

cannot be counted upon to protect the interests of the "exposure only" absent class members. *See Amchem*, 521 U.S. at 625-626.

Plaintiff's words and actions thus demonstrate that he could never adequately represent the interests of the absent class members. He is unwilling to forego claims for alleged personal injuries, but is ready to sacrifice the personal injury claims of the absent class members. *Foster*, 229 F.R.D. at 604-605 (finding inadequate a plaintiff who sought medical monitoring relief for class, but personal injury damages for himself). The Court therefore should deny certification on the grounds that plaintiff is not a typical or adequate class representative.

* * *

For all of the foregoing reasons, the Court should deny certification due to the overwhelming predominance of individual issues, the lack of typicality, and the lack of adequacy.

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CLAIMS.

After denying class certification, this Court should enter summary judgment against plaintiff for five independent reasons.

- Plaintiff cannot establish an essential element of each of his claims – that he was "either injured by Baycol, or that Baycol did not provide [him] any health benefits." *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14.

- Plaintiff's claims fail because the labeling warned of the exact side effects plaintiff alleges Baycol caused. *See Brown*, 44 Cal. 3d at 1069; *see also Barney v. St. Jude Med. Ctr.*, No. C-92-1058 DLJ, 1993 WL 13015619, at *6 (N.D. Cal. Feb. 12, 1993).

- Plaintiff cannot pursue claims predicated on false advertising because he has no evidence of a false statement.

- Plaintiff cannot pursue a CLRA claim because he failed to provide defendant with a mandatory pre-filing notice. Cal. Civ. Code § 1782.

- Plaintiff's medical monitoring claim fails because it is not a claim under California law and, in any event, is unsupported by case-specific expert evidence. *See Potter*, 6 Cal. 4th at 1007, 1009.

Because "there is no genuine issue as to any material fact," defendant is "entitled to judgment as a matter of law" on each and every one of plaintiff's individual claims. *CardioVention, Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 938 (D. Minn. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)).

**A. Baycol Worked For Plaintiff Without Adverse Side Effects.**

To prevail on any of his claims, plaintiff must prove that Baycol either did not provide any health benefits, or that it injured him. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14; Cal. Bus. & Prof. Code § 17204 ("injury in fact . . . as a result of" UCL violation); Cal. Civ. Code § 1780(a) ("damages . . . as a result of" CLRA violation); *Day*, 63 Cal. App. 4th at 338-39; *Dunkin*, 82 Cal. App. 4th at 198; *Wilens.* 120 Cal. App. 4th at 754; *Intervention, Inc.*, Order (Ex. F) at pp. 8-9.[6] Plaintiff cannot do either because the

---

[6] *See also Briehl v. GM Corp.*, 172 F.3d 623, 627-28 (8th Cir. 1999) ("Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.") (summarizing the laws of several states, including California); *Williams v. Purdue Pharma. Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) ("Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs.").

undisputed facts show that Baycol lowered his cholesterol without adverse side effects. The Court should grant summary judgment for this reason alone.

**1. Baycol worked for plaintiff.**

Plaintiff's medical history demonstrates that Baycol worked for him. Plaintiff was diagnosed with high cholesterol in 1990. Elich Medical Records (Ex. A) at NDL000128-129jre. Diet and exercise alone could not control his cholesterol. Elich Dep. (Ex. B) at 61:22-25. Nor could an earlier statin therapy, Lipitor. *Id*. at 58:20-23. Shortly before starting Baycol therapy, plaintiff's total cholesterol and LDL levels were poorly controlled at 211 and 161, respectively. Elich Medical Records (Ex. A) at NDL000100jre.

Shortly after initiating Baycol therapy, plaintiff's total cholesterol and LDL fell within normal levels to 182 and 122, respectively. *Id*. at NDL000098jre. Baycol worked so effectively that his physician recorded a "**[d]ramatic improvement in total and LDL from 161 to 122! Continue Baycol. Great news!**" *Id*. (emphasis added). But within two months of stopping Baycol therapy, tests showed that plaintiff's cholesterol was no longer well controlled, but had risen higher than the pre-Baycol levels, to 239 for total cholesterol and 192 for LDL cholesterol. *Id*. at NDL000073jre.

Plaintiff admits that his cholesterol levels were "on target" and "improve[d]" while on Baycol. Elich Dep. (Ex. B) at 163:9-23. Consequently, no triable issue of fact exists about whether plaintiff experienced health benefits as a direct result of Baycol therapy.

**2. Baycol did not cause adverse symptoms.**

Plaintiff also cannot show that Baycol injured him because he lacks competent expert evidence linking his alleged leg pain to Baycol. *Cottle v. Superior Court*, 3 Cal. App. 4th 1367, 1384 (1992) (requiring expert medical opinion on causation); *accord Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002); Fed. R. Evid. 702. Plaintiff's case-specific expert, Dr. Levine, opines that Mr. Elich experienced "myalgias – Baycol induced." Case Specific Expert Report Pursuant to PTO 114 by Neil D. Levine, M.D. (Ex. H) ¶¶ 1, 5.a. This opinion is inadmissible because plaintiff cannot carry his burden of establishing that this "expert findin[g] [is] based on sound science." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").[7]

First, Dr. Levine's opinion rests upon the fact that plaintiff experienced leg pain while taking Baycol. "[T]emporal association . . . is not scientifically valid proof of causation." *See Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989-90 (8th Cir. 2001) (excluding expert testimony); *accord McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005). Temporal association is not scientifically valid here because plaintiff remained on Baycol therapy without incident for nearly three years. Elich Dep. (Ex. B) at 141:24-143:13. Absent an explanation backed by accepted science to account for this delay, Dr. Levine's opinion is wholly inadmissible. *See Daubert II*, 43

---

[7] While plaintiff submitted a PTO 114 expert report from Dr. Levine, Dr. Levine was not produced for deposition. On November 9, 2006, Bayer filed a Motion for Discovery Sanctions for noncompliance with PTO 149, seeking dismissal of this case. That motion is fully briefed and pending before this Court.

F.3d at 1316; *see also Glastetter*, 252 F.3d at 989-90 (differential diagnosis must properly "rule in" potential causes before "ruling out" the least probable ones); PTO 131 (requiring expert to identify "case specific bases and reasons" for causation opinions).

Second, Dr. Levine does not expressly consider and rule out obvious alternative causes of plaintiff's leg pain, including peripheral vascular disease. A causation opinion that ignores alternative causes is no opinion at all. *See Glastetter*, 252 F.3d at 989 (requiring physician to consider and rule out alternative causes); PTO 131 (requiring expert reports to identify "[r]easons for excluding each of the possible alternative causes"). Where, as here, a defendant can point "to a plausible alternative cause and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 759 n.27 (3d Cir. 1994) (emphasis in original).

Dr. Levine's failure to rule out alternative causes is particularly suspect because, before this lawsuit, he himself attributed plaintiff's leg pain to peripheral vascular disease. When evaluating the reliability of Dr. Levine's current opinion, the Court should "not ignore the fact that a scientist's normal workplace is in the lab or the field, not the courtroom or the lawyer's office." *See Daubert II*, 43 F.3d at 1317. In this case, Dr. Levine's pre-litigation diagnosis of peripheral vascular disease as the likely cause of plaintiff's leg pain was (a) confirmed by an independent specialist selected by Dr. Levine, who agreed that plaintiff's "leg muscle pain [was] related to atherosclerosis," a form of peripheral vascular disease (Deemer Dep. (Ex. C) at 19:9-12); and (b) validated when the treatment recommended by the specialist for peripheral vascular disease

resulted in "improved symptoms" (*id*. at 24:10-12). Because Dr. Levine does not consider and rule out this plausible alternative cause of plaintiff's leg pain, his methodology is unreliable.[8]

Third, Dr. Levine's opinion is inadmissible because it is not "based upon sufficient facts or data" and thus is not "the product of reliable principles and methods." Fed. R. Evid. 702. PTO 131 required Dr. Levine to identify the medical records he relied upon to form an opinion about causation. Dr. Levine's report incorporates by reference eleven pages of medical records (out of more than 800 total pages). Levine Report (Ex. H) ¶ 4. Notably, none of these eleven pages covers the period of time when plaintiff's leg pain was successfully treated as a symptom of peripheral vascular disease. Such a limited review of the relevant records cannot support a reliable opinion about causation or valid differential diagnosis. *See* Fed. R. Evid. 702.

In sum, plaintiff lacks competent expert testimony that Baycol caused his alleged leg pain. *See Robinson*, 292 F.3d at 564; *Cottle*, 3 Cal. App. 4th at 1384. Consequently, defendant is entitled to judgment on all of plaintiff's claims.

**B. Baycol's Warnings Were Adequate.**

Defendant is entitled to judgment in its favor on all of plaintiff's claims for a separate and independent reason: the labeling specifically warned about the very side

[8] Dr. Levine's reliance upon a specialist to diagnose and treat plaintiff's leg pain as a symptom of peripheral vascular disease also shows that he considers himself to be unqualified to diagnose, treat, or rule out peripheral vascular disease as the cause of plaintiff's leg pain. *See* Fed. R. Evid. 702.

effect that plaintiff claims to have suffered as a result of using Baycol – muscle aches and pains. *See Brown*, 44 Cal. 3d at 1069.

Under California law, a defendant is not "liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities." *Brown*, 44 Cal. 3d at 1069; *see also Carlin*, 13 Cal. 4th at 1112-13. By definition, a drug warning is adequate if it discloses the "precise risk encountered by [the] plaintiff." *See Barney*, 1993 WL 13015619, at *7 (granting summary judgment because warning disclosed of risk).

These basic principles have been reaffirmed in numerous products liability actions. For example, in *Barney*, a plaintiff experienced impeded leaflet motion in a mechanical heart valve, and the valve had to be replaced. The manufacturer's labeling specifically warned of, and the prescribing doctor was aware of, the risk of impeded leaflet motion and associated heart failure, which could require reoperation. *Id*. at *5-6. Because the manufacturer advised the plaintiff's physician of "the precise risk encountered by plaintiff," the warnings were adequate as a matter of law. *Id*. at *4, *7. Accordingly, the court granted summary judgment in favor of the manufacturer and dismissed all of the plaintiff's claims based on the adequacy of the warnings. *Id*.[9]

[9] In contrast, in *Hufft v. Horowitz*, 4 Cal. App. 4th 8 (1992), a plaintiff who received a penile implant suffered from spontaneous, continuous erection. The court found an issue of fact existed as to the adequacy of the warnings because the defendant's general warning – *i.e.*, "surgical, physical, psychological, or mechanical complications" may occur, including "malfunction of the pumping mechanism or cylinder, tubing kinks, and leakage of fluids" – did not "contain any specific warning" "of the injury encountered by [plaintiff]" a "spontaneous, continuing erection." *See id*. at 21-23

Here, Baycol's labeling was adequate because it always warned of the exact side effect that plaintiff allegedly experienced – muscle aches and pains. *See Barney,* 1993 WL 13015619, at *7.[10] The Baycol labeling clearly disclosed that potential side effect. *See* Baycol Package Inserts 9/97, 12/99, 7/00, 05/01 (Ex. I) (disclosing risk that Baycol may cause "myalgia," "myopathy," "muscle aching," "muscle pain," and "muscle cramps"). The labeling for Baycol also always told physicians that Baycol "therapy should be discontinued if . . . myopathy is diagnosed or suspected." *Id*. These warnings were approved by the FDA, which determined that Baycol was "safe and effective" for use as recommended in the labeling, and were clear and direct. FDA Approval Letters (Ex. J).

Consequently, these warnings are adequate as a matter of law, plaintiff cannot recover for his alleged injuries, and defendant is entitled to summary judgment. *Brown*, 44 Cal. 3d at 1069; *Barney*, 1993 WL 13015619 at *7.

### C. Bayer Did Not Engage In False Advertising.

Plaintiff's CLRA, unfair competition, unfair advertisement, breach of implied warranty, and fraudulent concealment claims (the "misrepresentation claims") assume that defendant made false or misleading statements about Baycol. But plaintiff has no evidence of false or misleading statements. Defendant thus is entitled to summary judgment on the misrepresentation claims for this reason as well. *See Committee on*

---

[10] Because plaintiff's own theories about medical causation are incompetent, and Dr. Levine's opinion (assuming it is admissible) is limited to myalgia, the only relevant warnings for purposes of this action are those for myalgia. *See Robinson*, 292 F.3d at 564; *Cottle*, 3 Cal. App. 4th at 1384.

*Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 209-10 (1983) (requiring evidence of an advertisement that was likely to deceive for unfair competition and unfair advertising claims); Cal. Com. Code § 2313(1)(a) (requiring an affirmation of fact or promise by seller for implied warranty claim); Cal. Civ. Code §§ 1709, 1710 (requiring suppression of fact or affirmative misrepresentation for fraud); Cal. Civ. Code § 1770(a)(5), (a)(7) (requiring representation for CLRA claim).

**1. Plaintiff has no evidence of false advertising.**

Plaintiff's misrepresentation claims theoretically could stem from three sources: (1) the labeling for Baycol; (2) statements by defendant's representatives; or (3) advertisements. Plaintiff does not claim to have read the labeling for Baycol or to have spoken with defendant's representatives. Elich Dep. (Ex. B) at 93:12-19, 139:16-22. Plaintiff also struggled at his deposition to recall any information about purported Baycol advertisements. *Id.* at 99:14-20, 101:10-15, 129:8-15. Perhaps this is because *Bayer never marketed Baycol directly to consumers*. *See* Bayer's Verified Responses to Requests to Admit Facts (Ex. D) at 6; *see also* Clark Dep. (Ex. E) at 427:3-10. In all events, plaintiff's vague testimony about purported Baycol advertisements is inadmissible under several mutually-reinforcing rules of evidence.

First, plaintiff cannot prove that he saw a direct-to-consumer advertisement about Baycol *distributed by defendant Bayer Corporation*. Fed. R. Evid. 104, 602, 901. It is not enough for plaintiff to claim that he saw an advertisement that referred to "Baycol." Elich Dep. at 98:19-101:24. A witness with personal knowledge must testify that defendant created and authorized that particular advertisement. *See, e.g.*, *Positive*

*Black Talk, Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 375-76 (5th Cir. 2004) (excluding evidence of "promotional mailer" bearing defendant's name because plaintiff's employee, who claimed to have received the mailer and produced a copy of the mailer, lacked personal knowledge as to who created the mailer). Indeed, plaintiff's testimony lacks any foundation because he cannot identify exactly what he saw, when he saw it, or where he saw it. *See Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 270-71 n.10 (5th Cir. 2002) (affirming exclusion of articles because plaintiff failed to identify "the title and date of the journal").

Second, plaintiff's testimony about purported direct-to-consumer "Baycol" advertisements runs afoul of the "best evidence" rule. Fed. R. Evid. 1002. "To prove the content of a writing, recording, or photograph, . . . the original writing, recording, or photograph is required." *Id.* The purpose of the best evidence rule is to prevent inaccuracy and fraud. Fed. R. Evid. 1001-1002, Adv. Comm. Notes. "The elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description" of it. *Gordon v. United States*, 344 U.S. 414, 421 (1953). Plaintiff's testimony about the contents of alleged Baycol advertisements thus is inadmissible under the best evidence rule as well. *See, e.g.*, *Railroad Mgmt. Co. LLC v. CFS La. Midstream Co.*, 428 F.3d 214, 217-19 (5th Cir. 2005) (affirming summary judgment based, in part, on exclusion of testimony about the contents of an alleged assignment under the best evidence rule).

Third, plaintiff's fragmented recollection about purported Baycol advertisements is inadmissible under the "rule of completeness." Fed. R. Evid. 106. If plaintiff wants to rely upon a part of a writing or recording to support his misrepresentation claims, then defendant has the right to insist upon "the introduction . . . of any other part" of that writing or recording "which ought in fairness to be considered contemporaneously with it." *Id.* Plaintiff has failed to produce even a partial copy of an allegedly false or misleading Baycol advertisement. The "rule of completeness" thus bars his testimony to avoid the inherent unfairness of forcing defendant to litigate this case in a vacuum. *Id.*; *see also, e.g., Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 669-70 (7th Cir. 2003) (affirming district court's *sua sponte* exclusion of testimony that selectively quoted document under both the "best evidence" rule and the "completeness" rule).

In sum, plaintiff cannot prove a fundamental element needed to prevail on his CLRA, unfair competition, unfair advertisement, breach of implied warranty, and fraudulent concealment claims – the existence of a false or misleading advertisement to him by defendant. Defendant thus is entitled to summary judgment on these claims.

**2. Plaintiff cannot pursue claims predicated on truthful statements.**

Defendant also is entitled to judgment on plaintiff's misrepresentation claims because the one statement he recalls proved to be true. *See Comm. on Children's Television*, 35 Cal. 3d at 209-10; Cal. Com. Code § 2313(1)(a); Cal. Civ. Code §§ 1709, 1710; Cal. Civ. Code § 1770(a)(5), (a)(7). Plaintiff claims to have seen Baycol advertisements that stated Baycol was "[t]o reduce your cholesterol. See your doctor."

*See* Elich Dep. (Ex. B) at 101:16-20. Baycol *did* significantly lower plaintiff's cholesterol. *See* Elich Medical Records (Ex. A) at NDL000098jre (describing "[d]ramatic improvement in total and LDL from 161 to 122! Continue Baycol. Great news!").

Given these facts, the First Amendment also forecloses a misrepresentation claim. Even if defendants had advertised directly to consumers – which they did not – it would have had a constitutional right to engage in commercial speech that is not "inherently misleading." *See Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 100 (1990). No one disputes that Baycol, like all statins, lowers cholesterol. A mere "possibility" that "some consumers" may have been misled is not a sufficient basis for imposing liability. *See id.* The statement that Baycol can "reduce your cholesterol" thus is not "inherently misleading" and cannot support a misrepresentation claim. *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) ("statements approved as accurate by the FDA cannot supply the basis for . . . [unfair business practices] claims").

**D. Plaintiff Cannot Pursue CLRA Claim.**

Plaintiff's CLRA claim also fails because he cannot prove a necessary element to recover either damages or injunctive relief. A consumer cannot recover damages under the CLRA without first serving a pre-filing notice and providing an opportunity to cure the alleged violation(s). Cal. Civ. Code § 1782. Specifically, a consumer must:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violation of Section 1770; and
>
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Cal. Civ. Code § 1782(a).

California courts routinely dismiss CLRA claims for non-compliance with the pre-filing notice requirement. *See In re Baycol Cases*, Judicial Council Coordinated Proceedings 4217, Order (Cal. Super. Ct. May 30, 2003) (Ex. K) (striking claims for damages under the CLRA); *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41 (1975) (rejecting any theory of "substantial compliance" with the CLRA's pre-filing notice requirement); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (dismissing CLRA claim with prejudice); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303-04 (S.D. Cal. 2003) (dismissing CLRA claim with prejudice).

Furthermore, plaintiff cannot pursue injunctive relief under the CLRA (or any of his claims) because there is nothing to enjoin. "[W]hen as here, the assertedly wrongful practice has ended . . . its requested termination is a rather empty prayer." *Feitelberg v. Credit Suisse First Boston*, LLC, 134 Cal. App. 4th 997, 1022 (2006) (internal quotations omitted) (dismissing request for injunctive relief at the pleading stage). "Injunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (2005) (dismissing request for injunctive relief); *accord Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 574 (1995). Baycol was voluntarily withdrawn from the market more than five

years ago, and there is no evidence that it will be reintroduced. Plaintiff thus has no basis for obtaining injunctive relief. Because plaintiff cannot obtain any relief under the CLRA, this claim should be dismissed as a matter of law.

**E. Plaintiff's Medical Monitoring Claim Is Not Viable.**

Plaintiff's complaint includes a claim for "medical monitoring." Under California law, medical monitoring "is not a separate tort but simply an item of damages." *See San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 914 n.18 (1996); *Potter*, 6 Cal. 4th at 1007. For this reason alone, Bayer is entitled to judgment on this claim.

But even if medical monitoring were a stand-alone claim under California law, plaintiff's claim here still would fail as a matter of law. Plaintiff cannot be awarded medical monitoring damages under California law unless a case-specific expert opines:

> that the need for monitoring is a reasonably certain consequence of the exposure, based upon a consideration of at least the following five factors: (1) the significance and extent of the plaintiff's exposure to the chemicals; (2) the relative toxicity of the chemicals; (3) the seriousness of the diseases for which plaintiff is at an increased risk; (4) the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of members of the public at large of developing the disease; and (5) the clinical value of early detection and diagnosis.

*Potter*, 6 Cal. 4th at 1006.

Plaintiff's PTO 114 expert has not and cannot provide the opinions needed to satisfy any of the *Potter* factors. *Potter*, 6 Cal. 4th at 1006, 1009; *Lockheed Martin*

*Corp. v. Superior Court*, 29 Cal. 4th 1096, 1111 (2003). Plaintiff therefore cannot recover medical monitoring damages, and his purported medical monitoring claim should be dismissed.

**CONCLUSION**

For these reasons, defendants respectfully request that the Court deny class certification, and enter summary judgment in their favor and against plaintiff Joseph Elich on his individual claims.

Dated: March 28, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Catherine Valerio Barrad
Christine K. Son
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No. 101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*